# DECLARATION OF THOMAS WILLIAM GORDON LOWE QC

**I, THOMAS WILLIAM GORDON LOWE QC, of WILBERFORCE CHAMBERS, 8 NEW SQUARE, LINCOLNS INN, LONDON WC2A3QP STATE PURSUANT TO 28 U.S.C §1746 , hereby declare as follows:**

1. I am Queen's Counsel admitted to practise generally in England and Wales as well as the Cayman Islands. I was admitted to the bar of England and Wales as a barrister-at-law and have been continuously in practice since 1985. I was appointed as Queen's Counsel in 2008. I am a member of Wilberforce Chambers in London whose members are widely regarded for engaging in complex chancery and commercial disputes.

2. I have been asked to state shortly what the English limitation period is for claims in negligent misstatement and whether English law provides a basis for extending that limitation period. I have then been asked to say whether English law would characterize its own limitation period as procedural or substantive law for the purposes of a conflict of law analysis.

3. I have previously given a declaration in these proceedings. I do not profess to have any expert knowledge of the common law applicable in Texas or other US jurisdictions.

4. A curriculum vitae listing some of the cases in which I have appeared as counsel is attached hereto as Annex 1. I have provided expert testimony in other jurisdictions in the United States on English law as well as the law of other common law jurisdictions. Annex 2 comprises copies of the cases and other authorities referred to in this Declaration.

5. It is usual in England for experts to owe a primary duty to the Court to express opinions which they consider to be fair and do so in a balanced manner. I have approached this opinion with the same objective in mind.

*The English Limitation Period in Cases of Financial Loss*

6. The limitation period for common law negligent misrepresentation is dictated by the Limitation Act 1980 Section 2, which provides that "*[a]n action...shall not be brought after the expiration of six years from the date on which the cause of action accrued.*"

7. Under English law, the cause of action for negligent misstatement is not complete until actual, rather than potential damage has been suffered in reliance on the statement (see Forster v Outred & Co [1982] 1 WLR 86; Law Society v Sephton [2006] UKHL 22). This is a well-known general principle applicable to claims in tort. Although it is frequently discussed in limitation cases, the principle is more general than that: a person cannot bring a claim for a negligence unless and until there is actual loss because actual loss is an essential ingredient of the tort.[1]

8. The type of damage must be damage for which the plaintiff would have been able to sue. Actual damage was described in Forster as *"... it is any detriment, liability or loss capable of assessment in money terms."* As was accepted by Lord Hoffman in Sephton, a contingent liability, which is not immediately measurable as loss (such as the giving of an indemnity) is not actual damage. The damage cannot, it seems, be a matter of speculation or wholly uncertain.

9. Under English law this is a fact sensitive question, and it is not always easy to determine when actual damage has been suffered. The issue has therefore been repeatedly tested in higher courts (see UBAF Ltd v European American Banking Corp [1984] QB 713; the decision of the High Court of Australia in Wardley Australia Ltd v State of Western Australia (1992) 109 ALR 247, which was approved by the House of Lords in Sefton and again in Nykredit Plc v Edward

---

1 See for example the well-known case of Leigh & Sillivan v Aliakmon [1985] Q.B. 350 at 375affirmed in the House of Lords at [1986] AC 785

Erdman Ltd (No 2) [1997] 1 WLR 1627).

10. The limitation period is extended in negligence by virtue of Section 14A of the Limitation Act 1980 in actions for damages for negligence beyond the 6-year period to an alternative of 3 years from "*the earliest date on which the Plaintiff ... first had both the knowledge required for bringing an action for damages in respect of the relevant damage and a right to bring such an action*" if this extended period would be longer (*see* Section 14A(5)). Knowledge is knowledge of the material facts. There is a great deal of case law on the interpretation of this provision.

*Limitation: Old Common Law Principle*

11. English conflict of law principles dictate that certain issues are matters of procedure when the *lex fori* is applied whereas certain issues are regarded as substantive matters when the *lex causae* applies (see Dicey, Morris & Collins The Conflict of Laws 15th Ed. Rule 19 and commentary to 17-01) ("Dicey"). This distinction has been applied to the limitation of actions as well as other matters such as the granting of remedies. How this classification is applied on limitation and damages is analytically different. When applied to limitation periods the traditional common law distinction was that a provision that bars the remedy is procedural, whereas one that extinguishes the right is regarded as substantive.[2]

12. Originally in most areas where the substance and procedure distinction was applied a wide definition was given to "procedure" as a conceit to avoid the application of foreign law. For this reason, historically English statutes of limitation were generally regarded as procedural (Huber v Steiner (1835) 2 Bing.N.C. 202; Harris v Quine (1869 LR 4 QBD 653 at 658; Phillips v Eyre

---

2 By contrast in the context of damages the issue is whether the rule defines the kind of damage recoverable or merely goes to quantification.

(1870) LR 6 QB 1, 29; Black-Clawson v Papierwerke Waldhof-Aschaffenberg AG [1975] AC 591 at 630). The matter was never finally decided by the House of Lords or by its successor, the Supreme Court.[3] The current editors of Dicey say that this approach has fallen into disfavour, because it tends to frustrate the choice of law rules.[4]

*Statutory Intervention*

13. The apparent common law position on limitation periods was heavily criticized by commercial lawyers in England in the early 1980s. This led to the English Law Reform Commission publishing its report in 1982 on a statutory revision of the law "*Classification of Limitation in Private International Law,*" Law Com. No.114 (1982)[5]. This report was endorsed by the legislature when it enacted the Foreign Limitation Periods Act 1984.

14. It is hard now to foresee any circumstances in which an English Court would have to determine whether a limitation period is substantive or procedural. Since the Foreign Limitation Periods Act 1984, whenever a foreign law is applied in English proceedings, the foreign law also determines the limitation period applicable to the claims before the English Court. European legislation (known as Rome I and Rome II Regulations), would also require the English Court to apply foreign limitation periods in conflicts between European jurisdictions.[6] The reverse is also true: European Courts now are obliged to apply English limitation periods.

3 Black-Clawson, although a decision in the House of Lords, was not concerned with limitation.

4 See Dicey, Morris & Collins, the Conflict of Laws paragraph 7-003.

5 See http://www.bailii.org/ew/other/EWLC/1982/114.pdf

6 Rome II in respect of tort (non-contractual obligations) Articles 4 to 14 also regulate "*the manner in which an obligation may be extinguished and rules of prescription and limitation, including rules relating to the commencement, interruption and suspension of a period of prescription or limitation*" (i.e. Rome II governs the law applicable to limitation periods in the context of the application of European law).

*New Developments in the Common Law*

15. Whereas the common law in the context of limitation periods has not prompted further discussion in English courts since 1984, this is not true of the broader Commonwealth where the highest Courts (often treated in England as highly persuasive) have held that limitation periods should no longer be regarded as procedural. Foreign limitation periods were applied as part of the substantive law:

(1) In Tolofson v Jensen (1994) 120 D.L.R. (4th) 289 (Sup Ct Can) the Supreme Court of Canada rejected the traditional common law classification of statutes of limitation and the distinction between right and remedy, and it held that statutes of limitation are to be classified as substantive. This conclusion was confirmed by the Supreme Court of Canada in Castillo v Castillo.2005 SCC 83, (2005) 260 D.L.R. (4th) 439.

(2) In John Pfeiffer Pty Ltd v. Rogerson (2000) 203 CLR 503 ("*Pfeiffer*") the High Court of Australia held that the common law classification of limitation periods could no longer be followed. This principle was affirmed in respect of foreign limitation periods in two subsequent decisions of the High Court (see Regie Nationale des Usines Renault SA v. Zhang (2002) 210 CLR 491 and Neilson v Overseas Projects Corporation of Victoria Ltd [2005] HCA 54, (2005) 223 C.L.R. 331 where the High Court of Australia applied the limitation period of the law applicable to the tort).

16. In Pfeiffer at p544 the High Court approved the following explanation of the procedural and substantive distinction by Mason CJ:

> *"rules which are directed at governing or regulating the mode or conduct of court proceedings are procedural and all other provisions or rules are to be classified as substantive."*

This description substantially narrows the scope of "procedural rules" in the context of limitation but not in any other context. Neither the High Court of Australia nor the Supreme Court of Canada sought to do away with the distinction between substance and procedure: they merely redefined the test in the context of limitation. The question is whether an English Court would now choose to follow the reasoning in these Commonwealth decisions when characterizing its own English limitation periods (which are indistinguishable for these purposes from Australian ones).

17. A Court may certainly revisit the common law distinction as applied to limitation periods. English law recognizes that common law rules change over time and that a change in the statutory landscape would be followed if the common law had to fit around it. In a recent case R. (on the application of Prudential Plc.) v Special Commissioner of Income Tax [2013] 2 A.C. 185 p221 Lord Neuberger citing Oliver Wendell Holmes' *The Common Law* (1881) said this with regard to a common law restriction on the issue of legal-professional privilege:

> *"49. Where a common law rule is valid in the modern world, but it has an aspect or limitation which appears to be outmoded, it is by no means always right for the courts to modify the aspect or remove the limitation. In any such case, the court must consider whether the implications of the proposed modification or removal are such that it would be more appropriate to leave the matter to Parliament. The court must also consider whether the aspect or limitation in question has led to problems, and whether it has been assumed, approved or disapproved impliedly or expressly by Parliament. And if Parliament has unequivocally endorsed the aspect or limitation then the courts should not, of course, alter it.*
>
> *50 Subject to that last qualification, the question whether to remove or modify the aspect of the rule in question must inevitably be considered on a case by case basis...."*

18. At first it might seem that the question whether the common law principle had

changed had already been considered by the House of Lords in the relatively recent case of Harding v Wealands [2007] 2 AC 1. On closer inspection, however, it is clear that the case was concerned only with the substance-procedure distinction in the context of damages. In that decision the House of Lords overturned the Court of Appeal and held that a statute had not altered the prior common law rule that questions over the kinds of damage were substantive but questions over quantification remained matters of procedure to be determined by the forum. The House of Lords failed to follow the reformulation of the substance-procedure distinction endorsed in Pfeiffer. The main reason for not doing so was that *in the field of the rule about damages*, Parliament had deliberately shown that it did not want to alter the common law. The majority of the Lords did not have durable criticism of Pfeiffer or Tolofson that would prevent these decisions from being followed by English courts on a limitation argument.[7]

19. In my view, there is now a distinct and real possibility that an English Court faced with the issue of whether its own limitation period was substantive or procedural would approach the matter in an entirely different way:

(1) It would see that, as far as limitation periods are concerned, Parliament and the European legislative machinery had intervened comprehensively and disapproved of the common law treatment of limitation periods.

(2) The English Court would see that the matter was not settled

---

7 Lord Hoffmann noted (see p21 at paragraph 52), correctly, that Pfeiffer was concerned with an intra-national problem within a federal state but then failed to appreciate that Pfeiffer had been almost immediately extended by another decision of the High Court of Australian to a conflict between *international* jurisdictions (see Regie Nationale des Usines Renault SA v. Zhang). Lord Hoffmann had no other adverse comment on the decision. Lord Rodger (see p27 at paragraph 69) who did note that Pfeiffer had been extended, also observed that the Canadian Supreme Court in Tolofson may have been influenced by the fact that this was an intra-national problem. But he did not appear to know that the Supreme Court had already extended this to a conflict between *international* jurisdictions in Castillo v Castillo (which concerned a California limitation period).

authoritatively for limitation periods at the highest level. The highest previous authority was a nineteenth century decision of the Court of Appeal.

(3) Serious consideration would be given to the reasoning from judges who are held in high regard in England in the now numerous decisions from Australia and Canada and the change in attitude heralded by those decisions.

(4) The Courts would also pay serious regard to the criticism of the common law principle with respect to limitation in the most influential of the textbooks, Dicey, Morris & Collins[8] 15th ed. para 2-044, who say the following of the way in which the substance and procedure distinction should be applied to limitation periods:

> *If we apply the methodology suggested above, it becomes apparent that there is no justification for regarding any limitation rule as procedural, even if it does not extinguish the substantive right. The rationale of the English conflict rule that matters of procedure are governed by the law of the forum is one of practicality and convenience. This clearly applies to matters such as service of process or courtroom procedure. It does not apply to statutes of limitation: it is no more impractical or inconvenient to apply a foreign limitation rule that extinguishes only the remedy than it is to apply one that extinguishes the right as well."*

20. I do not wish to be understood as saying that the law is now clear on the view that a statute of limitation is substantive, but equally it cannot be said that it is settled law to characterize the provisions of the English Limitation Act 1980 on tort as being procedural. On the contrary, in my view it is still very much an open question for the Supreme Court to determine, assuming the issue was capable of being litigated further in England despite statutory intervention.

---

8 Lord Collins, a recently retired member of the Supreme Court, and Professor Briggs are the editor of the work and are widely regarded as the foremost authorities in England on private international law.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

**Executed on: February __4__, 2014**

______________________________

**Thomas William Gordon Lowe QC**