# DECLARATION OF MARTIN MOORE Q.C.

**I, Martin Luke Moore QC of Erskine Chambers, 33 Chancery Lane, London WC2A 1EN, state pursuant to 28 U.S.C. §1746**

## A: INTRODUCTION

1. I am a barrister in private practice in London. I was called to the Bar of England and Wales in 1982 and, on completion of my pupillage,[1] became a member of Erskine Chambers in 1983. Erskine Chambers, a set of Barristers Chambers, is widely regarded as the foremost company law Chambers in England and Wales. I was appointed Queens Counsel[2] in 2002. During the course of my practice as a barrister, I have focused on company law litigation and advice, corporate finance, mergers and acquisitions, financial services, insolvency and corporate reorganisations, including the reorganisation of the businesses of banks and insurance and reinsurance companies. I have extensive experience advising companies ranging in size from major multinational public companies to small family companies. As I have become more senior, however, the focus of my practice has moved firmly toward acting for public limited companies, more often than not companies whose securities are publicly traded. I am competent to make this Declaration, and I make this Declaration based on my personal knowledge of the matters recited herein.

2. Exhibit 1 hereto includes a true copy of my profile maintained on Erskine Chambers' website and extracts from *Chambers UK: A Client's Guide to the UK Legal Profession 2014* published by Chambers & Partners and *The Legal 500 2013* published by Legalease. Exhibit 2 comprises copies of the statutory materials and cases referred to in this Declaration.

---

1 My pupil masters were Lord Justice Longmore, as he became, and the late Oliver Weaver QC.

2 The Bar Council of England and Wales' website describes Queen's Counsel as follows: "A limited number of senior barristers are made Queen's Counsel as a mark of outstanding ability. They are normally instructed in very serious or complex cases. Most senior judges once practiced as QCs."

3. I am asked to address in this declaration the topic of the English law limitation period for the tort of negligent misstatement (which is a branch of the tort of negligence), and in particular the question of whether the limitation period which applies does so in a manner which is substantive, or procedural.

4. I have read the Declaration of Thomas William Gordon Lowe QC ("Mr Lowe") dated 4 February 2014, and the exhibited materials. I agree with what Mr Lowe says in paragraphs 6 to 9 about the application of the limitation period where the claim is litigated in an English Court.

5. As with many questions of legal characterisation the context of the question is all-important. Mr Lowe his given his views on the question in the context of English private international law. While, in the context of English conflict of law rules, I would not strongly disagree with his conclusion that the question of whether a foreign limitation period is viewed as substantive or procedural is not settled law (as it seems to me that while there is a settled position, it is conceivable that it could be overturned based on the Commonwealth authorities), I do strongly disagree with the notion that English law would regard an English limitation period as substantive for all purposes.

6. In so far as the English limitation period is relevant to the Texas Court, which will I assume apply its own principles of the conflict of laws, the question I am asked is how English law would characterize the operation of an English limitation period from a jurisprudential point of view – that is to say in the English domestic context.

7. I divide the rest of this declaration into two parts. I consider first that domestic question, before moving on secondly (and briefly) to consider the approach on English conflict of laws principles.

**The Operation of an English Limitation Period**

The Limitation Period for Negligent Misstatement

8. Negligent misstatement is a common law tort (a species of the tort of negligence). There is no inherent principle of limitation at common law (see *McGee* para 1-002).

9. As Mr Lowe explains, the limitation period comes from a separate statutory source, namely the Limitation Act 1980. The Limitation Act applies both to common law and many statutory claims, but the source of the claims themselves is either in the common law (as is the case for negligent misstatement) or in the relevant statute.

10. I do note that:

(a) There are some cases where English statutes do both create a claim and simultaneously provide a limitation period for that claim. An example from the corporate field is s.986 of the Companies Act 2006, which gives a shareholder the right to apply to the Court where he has been served with a "squeeze-out" notice in relation to a takeover. The section provides that an application "*must be made within six weeks from the date on which the notice ... was given*". I am sure there are other similar statutes, and I can see that in such cases it is arguable that the substantive right does not endure beyond the period in which it must be invoked.

(b) English law does recognise an equitable doctrine of laches which requires more than the mere passage of time, but this applies only to equitable claims and not where a statutory limitation period applies (*Snell's Equity*, 31st ed, 5-16).

11. However neither of those points apply to a common law tort such as negligent misstatement. Accordingly, the legal source of the claim in

negligent misstatement is fundamentally different from the legal source of the limitation rules.

The Effect of Expiry of Time

12. As I understand it, the real question here is (as posed by the leading textbook, *McGee on Limitation Periods*, 6th ed at 1-005) "*What happens when time expires*"?

13. The short answer is that the limitation period for a claim in negligent misstatement operates by barring the claim, or remedy, rather than the underlying right.

14. The most straightforward (though far from the only) basis for that conclusion is the wording of s.2 of the Limitation Act 1980, which bars a claim on the basis that *"an action ... shall not be brought after the expiration of six years"*. Thus on its face, the statute operates to bar a claim rather than to abrogate or extinguish a right.

15. This is recognised to be so in *Halsbury's Laws of England* (Vol 68 para 942) and by *McGee* which explains (at 2.019) that:

*"The barring of the remedy has been regarded as the usual response of the law to the expiry of the limitation period. Therefore, in an action founded on contract ... or on tort the effect of the expiry of the limitation period is generally said to be that the remedy is barred, but that the plaintiff's right is not extinguished".*

16. This can have real practical consequences, a point noted by *McGee* (at 2.023). So for example:

(a) Limitation is a defence which must be pleaded. If a defendant does not take the point, the claim can proceed on the basis that there is a substantive right to be vindicated. As Lord Donaldson of Lymington M.R. said in Kennett v Brown [1988] 1 WLR 582:

*" subject to special provisions made in rules of court, the Limitation Acts have always been applied, namely, as procedural bars which a defendant to a particular claim could raise if he wished, but which he was not obliged to raise if he did not wish."*

(b) Where money is paid pursuant to a claim which is time-barred, the payor does not have a restitutionary claim to recover his money, because the underlying obligation was valid. So in Moses v Macferlan (1760) 97 ER 676, Lord Mansfield CJ said that a restitutionary claim does not lie for money *"which is claimed of him as payable in point of honor and honesty, although it could not have been recovered from him by any course of law; as in payment of a debt barred by the Statute of Limitations"*.

(c) A legal set-off may only be asserted in respect of a right which is not time-barred, because the Statutes of Set-Off operate in a procedural fashion. However, an equitable set-off can be asserted on the basis of a time-barred right, because the right is substantive and still exists. (see *Derham on the Law of Set Off*, para 4.51).

(d) Where a primary obligation is time-barred, it is still possible to sue a guarantor of that obligation where there is a longer limitation period applicable to the guarantee (e.g. where the guarantee has been given by deed and a 12 year-limitation period applies) (see *Andrews and Millett, Law of Guarantees*, 6th Ed para 6-026). The primary obligation is not enforceable by way of a claim, but it continues to exist and the guarantee can be enforced.

(e) Likewise, some security in respect of a time-barred right may still be enforced. For example, it is possible to rely on a lien in respect of a time-barred debt. (*Halsbury's* at para 942)

17. In my view, the above analysis demonstrates that a limitation period bars the remedy and not the right.

18. There are exceptional cases in English law where the right is fully extinguished by the passing of a limitation period (see *Dicey and Morris* at 7-055 and *McGee* at 2.024). They usually (though not exclusively) arise where a statute expressly extinguishes the substantive right, rather than merely barring a claim. So for example s.17 of the Limitation Act 1980 provides on the expiry of the limitation period for an action for the recovery of land, title to that land is extinguished. That is in direct distinction to s.2, which applies to negligent misstatement claims.

19. Insofar as English conflict of laws principles are relevant at all, the view that limitation periods are essentially procedural in nature is supported by the English cases cited by Mr Lowe at his paragraph 12, in that where English courts have considered foreign limitation periods they have traditionally classified them as being matters which affect the remedy only.

20. Accordingly I am not in doubt that for the purposes of the taxonomy of English law for its own domestic purposes, the limitation period for negligent misrepresentation would be regarded as a procedural rule and not a substantive one.

**B: English Conflict of Laws Principles**

21. In the conflict of laws context, Mr Lowe is correct that the *effect* of the traditional common law approach of classifying according to whether the right or merely the remedy is barred has been largely superseded by the Foreign Limitation Periods Act 1984[1], such that (as he notes at para 14) it is hard to foresee the English courts ever having to deal with

[1] Though I note that English law reserves itself the right under s.2 to disapply the foreign limitation period if is contrary to public policy, including if it causes "undue hardship".

the question again. However, the *analysis* underlying the English common law approach has not been overruled.

22. While it seems to me to be a moot point, since English conflicts of law rules are not in issue, I do not consider that the English Courts would necessarily reconsider that analysis in the light of the Australian and Canadian judgments referred to by Mr Lowe (and I note that Mr Lowe himself says it would be an open question):

(a) The Australian and Canadian judgments appear to be driven more by policy considerations than any analysis of the manner in which a limitation period is created or operated. In Harding v Wealands [2007] 2 AC 1 both Lord Hoffmann and Lord Rodger advert to those decisions being driven by Australian and Canadian constitutional imperatives (as federal states) which do not apply to the United Kingdom.[2]

(b) As Mr Lowe. notes, in Harding v Wealands the House of Lords upheld the substance/procedure distinction. Mr Lowe is correct that this was in the context of damages – but that is significant because (as noted above) English law has traditionally treated limitation periods (like damages) as being a question of remedy: which Harding v Wealands confirms to be procedural. *Dicey and Morris* (at 7-005) refers to this as "*restating the orthodox approach in English law*".

(c) It is true that Lord Hoffmann expressed no dissatisfaction with the decision in Pfeiffer v Rogerson (2000) 203 CLR 503, but he had no occasion to do so and in any event would be rightly reluctant to make gratuitous criticism of a foreign decision by eminent Commonwealth jurists. I do not infer that an absence of criticism implies that (had they ever occasion to consider it) the English Courts would follow Pfeiffer, any more than the absence of

[2] Neither appears to regard the subsequent case of Regie Nationale des Usines Renault v Zhang (2002) 210 CLR 491 as deciding the point in relation to foreign torts.

criticism of the orthodox English approach supports a prediction that they would not.

(d) I would prefer to regard the Commonwealth developments in the same way as Lord Rodger (at 27) as giving food for thought to critics of the orthodox English approach. Were the question not rendered largely moot by the Foreign Limitation Periods Act, there would be an argument to be had as a matter of English private international law as to whether the existing orthodoxy should be rejected. However, as it is, that question would only arise if the Act were repealed, and it seems wholly possible that in those circumstances the orthodoxy would be confirmed.

23. I am happy to assist the Court further in any way required.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 10 th March 2014

Martin Luke Moore QC